The next case on the calendar is Ortiz v. City of New York. Good morning, Your Honors. May it please the Court, I represent the appellant, the plaintiff, Hector Ortiz in this case. You can wait just a few seconds and let people go out the back. They won't distract you, but they may distract us. Mr. Lee? Yes, thank you. Again, may it please the Court, I represent the appellant, the plaintiff, Hector Ortiz in this case. Appellant is asking this Court to uphold the jury verdict that awarded compensatory damages to Ms. Ortiz and found that the defendant, Officer Vasquez, used excessive force even if the plaintiff was lawfully arrested. We ask this Court to overturn the District Court's decision to grant the defendant's motion for Rule 50B judgment as a matter of law in favor of the defendant's because procedurally, the defendant should be barred from even bringing the 50B motion because they never requested the special interrogatory at the charging conference, and also they made no specific arguments, even at trial, as to why they were entitled to a finding of no excessive force. Substantively, the District Court erred in its decision by misapplying the standard that the evidence should be viewed in the light most favorable to the plaintiff, who was the non-moving party, by finding that the jury found entirely for the defendant police officer's set of facts and not crediting any of the evidence or testimony presented. Should I marshal that evidence? I mean, what is the evidence supporting a finding that Officer Vasquez used unreasonable force? Yes, Your Honor. The evidence includes the testimony by the defendants themselves, Officer Hanna and Officer Vasquez, who stated that under their set of facts even, immediately before placing the handcuffs, the plaintiff was walking around in circles. Immediately after being placed in handcuffs and in custody, the plaintiff was wiggling around, able to keep balance on his left knee, which the expert said was anatomically impossible. But then as the officers were applying— Wait, Mr. White, try to go a little slower so we can absorb all this. Mr. Ortiz testified as to what use of force he claimed there was, right? Yes, Your Honor. And that, of course, would be something that supports the verdict. The issue, I take it, is he places that use of force at the very beginning of the encounter, before there had been anything that would give the officers any occasion to intervene, and the jury evidently did not believe at least that part of Mr. Ortiz's testimony, right? I would agree with that assessment, Your Honor. I would say that— But what you're saying is they could believe part of it and not all of it. That's right. And one reason they could believe part of it is that you had a medical expert who testified that the injuries that were depicted on the x-rays at the hospital, when he arrived at the hospital, were consistent with exactly the kind of use of force that he claimed that the officer inflicted by kicking him behind the knee. Right. The appellant plaintiff posits that the jury credited that moment in time to the plaintiff, which was, first, he's fine. He may be stumbling, but he can put weight onto that left knee. And then immediately after he's being placed down onto the ground, as the defendant, Officer Hanna, testified, he crumbled. And in that moment, the jury credited the plaintiff in that moment in time, because what resulted was a fracture of the left tibial plateau, which is— Can I ask a question? Yes. Judge Coate concluded that the jury rejected Ortiz's version of events. And one of the things she relied on was the jury's denial of pain and suffering, right? The damages for conscious pain and suffering. Right. And so how do you reconcile that with what you're just describing now, which is that the injuries to the knee were consistent with the version of the plaintiff? I would say that even if the plaintiff was so drunk as to not remember any of the events that occurred, there still was an expert that said that you can walk before being placed in handcuffs, and then immediately after being placed in handcuffs and still being able to wiggle around, and then being put onto the ground, you suffer a fractured tibial plateau, which is so painful that you would not be able to— Mr. Ortiz had to get a CT scan and was in so much pain that he had to have a cast up to his thigh. But if he's so drunk that he couldn't have been conscious of the pain and the suffering, could he then possibly have given testimony about what happened leading up to the fracture? We would say that it is such a short moment in time, Your Honor. It was that moment that he was put onto the ground that this occurred to him, and that's what the expert testified to, that this moment in time was what caused— and this is what the jury found as well, Your Honor, which is that moment in time caused the plaintiff's injury. Well, the jury clearly returned a verdict on excessive force. We don't know. They weren't asked to describe the version of events. They were not given the binary choice of whose version of events do you choose to accept. They were given the binary choice on summation for the defendants. The defendants asked that the jury find entirely their set of events, but the jury chose not to. No, no, I get that, but the point is the verdict form doesn't ask them to do that, and in fact the jury instructions tell them they get to do something very different. They get to decide that there might be lots of facts from one source or another source that they can credit or discredit as they see fit. Right. It would have been error, wouldn't it, for the judge to say you must believe entirely one side or the other, and that's all this case is about, and so I'm putting it to you. You have to decide either he's telling the truth or they're telling the truth, and don't worry about anything else. That's the principal thing. That would be error, wouldn't it? That would be error, Your Honor, but in fact— And you're saying because the law is precisely the opposite. The law is they can believe some and not others depending on what they find to be corroborated or not corroborated. Absolutely, Your Honor. And the significance, what you're saying, you started out by saying something that supports the jury's verdict on excessive force is the officer's testimony, and of course the officer's testimony is quite to the contrary, but the significance you're saying is although the jury answered the interrogatory that they found him lying on the ground, the officers then say, but then he got up, so that the fact that they found him on the ground and the jury so found does not say anything about what happened after he got up and whether they used excessive force to put him back on the ground. In fact, Your Honor, that entire interrogatory was ambiguous and did not assist in any meaningful qualified immunity analysis. We argue that that interrogatory could have spoke about the manner in which Defendant Officer Vasquez brought Plaintiff to the ground, the degree of force used to do so, the circumstances surrounding the use of force, such as whether— and there are interrogatories of that sort to have special findings on what exactly he was doing and what exactly they did in response that would inform a decision of whether a reasonable officer might have even mistakenly thought that what was done was reasonable. Yes, Your Honor, and I see my time is up, but I wanted to just briefly talk about this point, which is that procedurally they should have never even been able to bring the qualified immunity defense because they didn't argue in particularity before this 50B post-trial motion for judgment as a matter of law. And therefore, we don't think that they should have been barred from bringing qualified immunity. Judge Cote made a lot of discussion that took place with counsel before, I guess, summations about what exactly Plaintiff's counsel was seeking. And Plaintiff's counsel—you were counsel below or no? Yes. You were. And so you said yes to the question that she posed, which is kind of a long question, but basically she said, if the jury believes the defendants that they placed handcuffs on the plaintiff after they found him, encountered him lying on the pavement, the plaintiff is not seeking damages for an excessive use of force. Do I have this straight? And you answered yes. Sorry, just repeat that, Your Honor? I'm sorry. Well, it's in the record at 943, but Judge Cote asked if they, the jury, believe that defendants placed handcuffs on the plaintiff after they encountered him lying on the pavement, the plaintiff is not seeking damages for an excessive use of force. Do I have this straight? And the answer was yes, Your Honor. I'm sorry, I can't concede to that. I don't know that part of the brief. Okay.  Good morning, Your Honors. May it please the Court? My name is John Moore, representing the City of New York. The defining issue and defining question for plaintiff's excessive force recovery is whether the jury is free to conjecture about the specific circumstances in which force was used after having rejected the testimony in which force was alleged. Wait, who says, I mean, who says what they rejected or didn't reject? I mean, isn't that the point we were just making? Juries forever get to decide which facts they believe and which ones they don't believe. It's not all or nothing. I agree with that as a jury. So who are you or Judge Cote to say what they rejected or didn't reject? I agree with that as a general principle. What we do know is that the jury rejected the context in which plaintiff alleged the force was used, that he was walking down the street. No, all we know is that they rejected the notion that he was wrongly arrested, right? Yes, and the only evidence to indicate that he had been correctly arrested was that he was drunk to the point that he needed to be detained for his own safety under the mental hygiene law. Right, so you don't get to arrest him. So they were justified in arresting him because he is falling down drunk. Right. They don't get to beat the hell out of him, right? I agree with that, Your Honor, and there's no allegation that there's no testimony that they did that in the context of detaining somebody who is drunk, belligerent. No allegation that they beat the hell out of him? There's no allegation. The plaintiff's testimony, wasn't it? Well, again, the plaintiff's testimony was that he was grabbed from behind while soberly walking down the street, which, again, was not what the jury found, and that he was immediately forced to the ground. It was all one occurrence. The excessive force and unlawful arrest were part of the exact same act. And so the cases where the jury has been found, where the courts have found that the jury is free to choose some facts and reject others and have that pick and choose, all relate to different facts. Why can't the jury believe that Mr. Ortiz was embellishing, that he was trying to make himself look like a total innocent? He was, after all, claiming unlawful arrest as well as excessive force, but that there was no independent corroborating evidence of his account of what began the incident, but that there was corroborating evidence of his claim as to what force was used, corroborating evidence in the form of the medical expert testimony. Well, I'm not a medical expert. I don't know whether that would be believable to me or whether I would find another expert's opinion better or whatever, but it was evidence. There was an expert testimony that the kind of injury that he had at the time he came to the hospital was not only consistent with, but was only consistent with being kicked in the way he said he was kicked and was inconsistent with, and the whole story is inconsistent on anybody's account, with the idea that he had that injury before the police arrived on the scene and that he'd had it for weeks or from some other incident or anything of the sort. Now, why couldn't the jury say, well, that makes me credit the story that he must have been very severely treated here and specifically was kicked in this way. I think that's excessive force, and I'm going to fine for that, but really this idea that he's trying to peddle to me that he just was walking along, meaning no offense to anyone, doing nothing wrong, and the officers just grabbed him. And in that context, roughed him up for no reason at all, and he shouldn't even have been arrested in the first place, that's a bridge too far. We're not going to buy that. What is crazy about what I just said such that a jury would not be allowed to do that? There's a lot in that question, Your Honor, so let me try to break out a couple of different pieces. The first is that I don't know that I can see that the injury here could only have taken place during the encounter with the officers. Dr. Dassett testified, pages 458, that it would be possible to hobble around to some degree, though in pain, after having sustained this injury, which is consistent with the officer's testimony of him hobbling, staggering around. And he was ambulatory in some way. He was ambulatory at the hospital. So I don't know that I can see that point just as a starting point. The next point is in terms of what the jury found. So are you saying that the evidence of trial is consistent with the proposition that he was injured before he encountered the officers? I'm saying that the evidence is consistent with that being possible. And I don't know what the jury found on that, but I wanted to break that out as something that we don't concede here. The next point is, as Judge Sullivan pointed out during my adversary's argument, that the jury found that he suffered no conscious pain and suffering from the time that he encountered the officers to the time he was put in the ambulance. If the jury credited the medical testimony, the testimony was that he would have been in excruciating pain had this happened as he described, that he would not have been ill, he would have been screaming. Dr. Das at one point says that alcohol could not have deadened this pain and goes so far as to say that he has had patients under general anesthesia whose leg is still jumping with this kind of injury. So the jury finding that the plaintiff suffered no conscious pain and suffering indicates that they rejected the plaintiff's testimony in its entirety. Is this really then an inconsistent verdict argument that you're making? In part, yes. And the special interrogatory helps clarify that and takes us to the point where the verdict, because the special interrogatory indicates that the jury was credited more to the officer's version of events. And I want to finish, because I think I've ducked your actual question, so let me finish this and get in and return to that. That because the special interrogatory is inconsistent with the verdict on excessive force for the plaintiff, Judge Coate was justified in entering verdict as a matter of law to the contrary. To your, I think the heart of your question, having quibbled now with the details, about what the jury is allowed to choose or not choose. Generally, I think that you're right, that the jury is allowed to say, yes, this part, but not that part. Where it becomes problematic is in a extremely context-specific inquiry like for excessive force, where the Supreme Court and this court have repeatedly made clear, the inquiry depends entirely on the reasonableness of the force used in the context that it was used, in the specific circumstances. And so, because if we're taking out the plaintiff's testimony about what those circumstances were, then we're not, then we don't know at what point during this encounter, even assuming, I apologize, even assuming that we credit the officer's version of events generally, at what exact point the officers made the determination that force had to be used, that they had to bring him to a sitting position or bring him down to the ground. Well, but that's when they're bringing him down to the ground. He says he was brought down to the ground by being kicked in the back of the knee. They say they gently put their hands on his shoulders and brought him to the ground. So he goes to the ground one way or the other. Yes. And so, because we don't know exactly what he was doing at that point, because we don't know exactly how the force was used at that point, Well, we do have the officer's account of what he was doing that led them to bring him to the ground. Yes, I agree. And you're saying it would be unreasonable for a jury to conclude that if in that circumstance, given what they described he was doing, when they thought the appropriate thing to do by their own testimony was to gently put their hands on his shoulders and guide him to the ground, that if he was kicked in the leg at that point, that's excessive force. That's an unreasonable conclusion for the jury to make? Yes, but I'm not going to persuade you. You're saying it's unreasonable not because that would be a reasonable use of force in a context where he was carrying on the way the officers described and where they thought what they should do is bring him to the ground. You're saying it would be an unreasonable verdict because nobody says that that's the moment and that's the context in which he was kicked. Essentially, that there's a hole in the evidence, that the jury would have to guess, have to speculate, that that was the point at which he was struck in the knee. But even setting that aside, I guess I know what you're going to say. That's just speculative. But it puzzles me because it seems to me speculation is when there's nothing either way. It seems to me not such an unreasonable inference that the moment when something that would bring him to the ground, that a reasonable jury, I think, could think did happen during this episode, that the moment it happened was when they were bringing him to the ground. That doesn't seem to be made up out of somebody's head. That seems like an inference given all these facts. Even if we were to concede that to plaintiff, that merely brings us into the realm of qualified immunity, which would remain in place. Here, there is no clearly established law that police officers faced with a highly intoxicated, belligerent person in a public place in a time that we know pedestrians are walking down the street, that those officers are not allowed to use some degree of force to bring that person to a seated position. So, again, even conceding that an excessive force verdict may be possible, and we don't. Does what you just said automatically establish qualified immunity? That is to say, if we think that the circumstances that are really perfectly consistent with the jury's verdict, the most likely view of the scenario as to he was being belligerent, he was being drunk, they had to bring him to the ground. They were entitled to use reasonable force to do that. That establishes that there's qualified immunity for a violent kick to the back of the knee, if that's what the fact-finding should be. I think that's what you just said, that it's automatically qualified immunity because they could use some force to accomplish this goal in those circumstances. Correct. And because we don't know how much force was actually used at that point. Because, again, plaintiff's testimony was rejected on that point and that he was not conscious of any pain or suffering at that point. We don't know what degree of force was used. That is speculation. If the jury could have found that at some point in this encounter the officer delivered a kick to the back of the knee with sufficient force to inflict the injuries, is there any point during the encounter at which that would have been a reasonable thing for the officer to do? Well, so the evidence, because the evidence is not clear on this, it's hard to say, but there are multiple points. For instance, plaintiff was said to have brought his fists up ready as if to fight. He is throwing a speaker on the ground. If there are pedestrians in the area when that happens, then an officer, I believe, would be entitled, a reasonable officer could conclude at that point that this person needs to be brought down to the ground very quickly and that the way to do that is to kick him in the back of the knee. So even if there was the possibility of an excessive force verdict here with that hole in the evidence, with that absence of context, I think qualified immunity would apply. Very briefly, to the point that my adversary closed with on the procedural issue, he says that the defense never raised the argument that was subsequently brought up again in the Rule 50B motion. I direct the court to page 746 of the record where the defense counsel says, there has been no evidence put forth that on the defendant's version of events any type of excessive force was used against the plaintiff. That's exactly the argument that was raised again on the 50B motion. It was clearly preserved, as the court found. Thank you very much. Thank you, Your Honor. Just a few brief points. Okay, so factually, the appellee mentioned that hobbling around, that Dr. Dasa mentioned that you can hobble around. In fact, on page A458, he continues that sentence that says, and the question is asked if a person is intoxicated, do you have an opinion whether just intoxication would dull that pain sufficiently to allow somebody to walk or to stand? And he answers, not to the degree they would be functional, no. And then Dr. McConnell said that ambulatory could actually mean walking with assistance. With regard to there not being no pain, conscious pain and suffering, there were still compensatory damages that were awarded to the plaintiff. And in terms of punitive damages, the jury decided and chose not to punish the police officer, but that doesn't mean that in this moment in time excessive force did not occur. Excuse me, Mr. Lee, what were the compensatory damages for? How were the damages broken down? It was $78,000 for the surgery that was required. Medical expenses. Correct, yes. $30,000 for past pain and suffering, and then $10,000 for future pain and suffering, Your Honor. And so what is the pain and suffering? If they gave an award for past pain and suffering, what is it? This isn't anything but an argumentative point. I'm just trying to get my head around it. When was that passed, that they gave him the $30,000 in damages, and how do we know that none of that was for a particular time period? Well, the past pain and suffering could have been for pain in the hospital or pain for the rest of his life up to the date of the trial and all that. Right, exactly. But, I mean, what tells us that it wasn't for the period after the arrest? Everyone's taking that for granted, and I assume there's a good reason for that, and I just want to know what your position is. Is there some line that says how much compensatory damages for pain and suffering that evening? That's the verdict form. Did the plaintiff establish by a preponderance the evidence that he's entitled to damages for conscious pain and suffering from the time of his first encounter with the defendants until he was placed in an ambulance? And that's zero. Right. And then $30,000 for pain and suffering after that, but not in the future. Right. Got it. And then in terms of, again, we do believe that there was an unreasonable use of force, and therefore there was excessive force, and under those set of facts, a reasonable police officer in that situation that was confronted with a drunk, even if it was drunk, they said themselves that he was not resisting arrest in any way before he was put into handcuffs. And even after he was put into handcuffs, the only resisting that he presented was trying to wiggle away from the police officers. That doesn't mean there should have been a fracture of the tibial plateau, which, again, could have only been sustained by blunt force to the inside of the knee. And, again, Dr. Dasa said that it was anatomically impossible for that to be caused from a trip and fall. So we believe that there was definitely excessive force, and that force that was used in that situation does not give qualified immunity to the officer. And, again, we do know the amount of force that was used. Dr. Dasa explained what that force was, but we don't have testimony as to how the force was applied. But, again, I think the jury reasonably inferred from these set of facts. And, again, in just that moment in time, what happened. Thank you, Your Honor. Thank you, Mr. Lee. We'll take the matter under advisement.